1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 12/14/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JOHN H. GIORDANO, et al.,

               Plaintiffs,

       v.

WACHOVIA MORTGAGE, FSB, et al.,

               Defendants.

Case Number 5:10-cv-04661-JF

ORDER[1] DENYING MOTION FOR REMAND; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART; DENYING MOTION TO STRIKE AS MOOT; AND DENYING MOTION FOR PRELIMINARY INJUNCTION

[re: dkt. entries 13, 14, 15, 17, 27 ]

Plaintiffs John and Georgana Giordano ("the Giordanos") move to remand this action to the Santa Clara Superior Court for lack of diversity of citizenship. They also seek a preliminary injunction enjoining Defendants from going forward with a foreclosure sale of their home. Defendant Wachovia Mortgage, FSB ("Wachovia") moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f). The Court has considered the

---

[1] This disposition is not designated for publication in the official reports.

1  moving and responding papers and the oral arguments of counsel presented at the hearing on

2  December 10, 2010.  For the reasons discussed below, the motion to dismiss will be granted with

3  leave to amend in part; the remaining motions will be denied.

4  ## I. BACKGROUND

5       On October 4, 2010, the Giordanos filed the instant action in the Santa Clara Superior

6  Court, alleging six state law claims arising out of the refinance of their home mortgage and their

7  subsequent default on the loan:  (1) negligence per se - violation of California Civil Code §§

8  2923.5 and 2924; (2) negligence per se - violation of California Civil Code § 2934a;

9  (3) promissory fraud; (4) financial elder abuse, (5) negligence per se - violation of California

10  Civil Code §§ 1920 and 1921; and (6) unlawful business practices in violation of California

11  Business and Professions Code § 17200 *et seq*.  The complaint alleges that in 2005 the Giordanos

12  obtained a loan in the principal amount of $688,000 from World Savings Bank, FSB ("WSB"),

13  which was secured by the deed to their home.  Complt. ¶¶ 2, 7; Def's Req. For Jud. Not. Exhs. A,

14  B.[2]  In 2007, WSB changed its name to Wachovia Mortgage, FSB.  Def's Req. For Jud. Not.

15  Exh. H.  In 2009, Wachovia Mortgage, FSB became Wachovia Mortgage, a division of Wells

16  Fargo Bank, N.A. ("Wells Fargo").  *Id*. Exh. J.

17       At the time of the transaction, John Giordano was seventy-eight years old and Georgana

18  Giordano was sixty years old.  Complt. ¶ 7.  The loan agreement was a thirty-year adjustable rate

19  mortgage with an initial interest rate of 6.710%.  *Id*. ¶ 9.  The Giordanos claim that they did not

20  understand that this initial rate would be in effect for only two months; they thought the rate

21  would be in effect for the entire term of the loan.  *Id*.  They also claim that they were unaware of

22  other aspects of the loan, including a negative amortization feature and a prepayment penalty.  *Id*.

23  ¶¶ 9-10.  In 2009, the Giordanos began to struggle to make their monthly mortgage payments as a

24  result of the increase in their interest rate and other financial problems.  *Id*. ¶ 12.  On August 11,

25   

26      [2] Wachovia's request for judicial notice in support of its motion to dismiss will be
granted.  When considering a motion to dismiss, the Court ordinarily does not look beyond the

27  four corners of the complaint.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).
However, the Court may take judicial notice of documents referenced in the complaint, as well as

28  matters in the public record.  *Id*. at 688-89.

1   2009, a notice of default was recorded by Defendant Executive Trust Services, LLC ("ETS") on

2   behalf of Wachovia.  *Id.* ¶ 12.  On November 12, 2009, a notice of trustee's sale was recorded by

3   ETS.  *Id.* ¶ 15.

4        After receiving the notices of the default and of the trustee's sale, the Giordanos

5   contacted Wachovia to ask about the possibility of a loan modification.  *Id.* ¶ 17.  A Wachovia

6   representative allegedly agreed over the telephone to reinstate the loan and to suspend foreclosure

7   proceedings pending the Giordanos' submission of an application for loan modification.  *Id.*  The

8   Giordanos did submit an application, and they called Wachovia monthly to check on its status.

9   *Id.* ¶ 18.  In May 2010 Wachovia informed the Giordanos that their application had been denied.

10  *Id.* at ¶ 19.  ETS rescheduled the trustee's sale for October 7, 2010.  *Id.* at ¶ 20.

11       The superior court issued a temporary restraining order enjoining Defendants from going

12  forward with the sale.  Wachovia then removed the action to this court on the basis of diversity of

13  citizenship as defined by 28 U.S.C. § 1332.

14                          **II. MOTION FOR REMAND**

15       The Giordanos are residents of California.  They assert that Wells Fargo also is a citizen

16  of California, and thus that there is not complete diversity of citizenship between the parties.

17  This Court recently had occasion to examine the question of whether Wells Fargo Bank, N.A. is

18  a citizen of California for diversity purposes.  Wells Fargo is a nationally chartered bank; its

19  main office is in South Dakota, but it maintains a principal place of business in San Francisco,

20  California.  *DeLeon v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2010 WL 2382424, at *3

21  (N.D. Cal. June 9, 2010).  This Court concluded that Wells Fargo is a citizen of South Dakota,

22  the state in which its main office is located.  *Id.* at *4.  The Court declined to apply a principal

23  place of business test, and it concluded that Wells Fargo is not a citizen of California.  *Id.*  The

24  Giordanos have not presented any facts or argument that would lead the Court to reach a different

25  conclusion here.  Accordingly, the motion for remand will be denied.

26                          **III. MOTION TO DISMISS**

27  **A.    Legal Standard**

28       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

3

1  failure to state a claim upon which relief may be granted.  "Dismissal can be based on the lack of

2  a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

3  theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  For purposes of

4  evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint

5  to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of*

6  *Los Angeles*,  828 F.2d 556, 561 (9th Cir. 1987).

7  　　However, mere conclusions couched in factual allegations are not sufficient to state a

8  cause of action.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem.*

9  *Co.,* 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim

10  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A

11  claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

12  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

13  *v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the

14  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

15  suggestive of a claim entitling the plaintiff to relief. " *Moss v. U.S. Secret Serv.,* 572 F.3d 962,

16  969 (9th Cir. 2009).

17  **B.　　HOLA Preemption**

18  　　Wachovia asserts that all but one of the Giordanos' claims are preempted under the Home

19  Owners' Loan Act of 1933, 12 U.S.C. § 1461 *et seq.* ("HOLA").  While preemption analysis

20  begins with the presumption that Congress did not intend to supplant state law, this presumption

21  is "not triggered when the State regulates in an area where there has been a history of significant

22  federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000); *see also Bank of Am. v. City*

23  *& County of San Francisco*, 209 F.3d 551, 558 (9th Cir. 2002).  "Congress has legislated in the

24  field of banking from the days of *McCulloch v. Maryland*, 17 U.S. 316, 325-26 (1819), creating

25  an extensive federal statutory and regulatory scheme." *Bank of Am.,* 209 F.3d at 558.  Similarly,

26  Congress enacted HOLA to charter savings associations during a time of economic uncertainty

27  for state-chartered savings associations.  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005-

28  06 (9th Cir. 2008).  HOLA was crafted in part to restore public confidence in a network of

centrally regulated federal savings and loan associations. *Id.* Through HOLA, and its

implementing regulations, Congress authorized and delegated power and authority to the Office

of Thrift Supervision ("OTS") to regulate and govern "every federal savings and loan association

from its cradle to its corporate grave." *De La Cuesta,* 548 U.S. at 145; *see also* 12 C.F.R. §§

500.1(a) (the OTS "is responsible for the administration and enforcement of the [HOLA]"),

500.10 (the functions of the OTS are to "charter, supervise, regulate and examine Federal savings

associations."). OTS expressly is authorized "to promulgate regulations that preempt state law

affecting the operations of federal savings associations." 12 C.F.R. § 560.2(a).

Section 560.2(b) sets forth a non-exhaustive list of thirteen types of state laws that are

expressly preempted, including the following:

> (4) The terms of credit, including amortization of loans and the deferral and
> capitalization of interest and adjustments to the interest rate, balance, payments
> due, or term to maturity of the loan, including the circumstances under which a
> loan may be called due and payable upon the passage of time or a specified event
> external to the loan;
> ...
>
> (9) Disclosure and advertising, including laws requiring specific statements,
> information, or other content to be included in credit application forms, credit
> solicitations, billing statements, credit contracts, or other credit-related documents
> and laws requiring creditors to supply copies of credit reports to borrowers or
> applicants;
> ...
> (10) Processing, origination, servicing, sale or purchase of, or investment or
> participation in, mortgages.

12 C.F.R. § 560.2(b)(4), (b)(9)-(10).

Similarly, § 560.2(c) lists types of state laws that are *not* preempted "to the extent that

they only incidentally affect the lending operations of Federal savings associations or are

otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. § 560.2(c).

That list includes: (1) contract and commercial law; (2) real property law; (3) specified

homestead laws; (4) tort law; (5) criminal law; and (6) any other law that OTS finds furthers a

vital state interest and has only an incidental effect on lending operations or is not contrary to the

purposes of HOLA. 12 C.F.R. § 560.2(c).

The Ninth Circuit has given the following guidance with respect to determining whether a

particular state law is preempted by HOLA:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)).

**C. Claim 1:**

Claim 1 alleges violation of California Civil Code §§ 2923.5 and 2924. The former section requires that before filing a notice of default, a lender must contact the borrower and explore alternatives to foreclosure. The latter section sets forth the procedures for filing a notice of default and conducting a foreclosure sale. The Giordanos claim that Defendants failed to contact them and engage in the requisite communications regarding alternatives to foreclosure.

Although the Ninth Circuit has yet to address the issue, several district courts within the circuit – including this Court – have concluded that claims under these sections are preempted by HOLA. *See DeLeon*, 2010 WL 2382404, at *6 (claims under § 2924 preempted); *see also Nguyen v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2010 WL 4348127, at *10 (N.D. Cal. Oct. 27, 2010) (claims under § 2923.5 preempted); *Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010 WL 2618729, at *6-7 (S.D. Cal. June 25, 2010) (claims under § 2923.5 preempted). These courts have concluded that §§ 2923.5 and 2924 fall squarely within § 560.2(b)(10), preempting "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

The Giordanos rely on a California appellate court decision, *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), holding that § 2923.5 is not preempted. *Mabry* notes that the process of foreclosure traditionally has been a matter of state real property law, and goes on to state:

> Given the traditional state control over mortgage foreclosure laws, it is logical to

6

1    conclude that if the Office of Thrift Supervision wanted to include foreclosure as
     within the preempted category of *loan servicing*, it would have been explicit.
2    Nothing prevented the office from simply adding the words "foreclosure of" to
     section 560.2(b)(10).
3

4    *Mabry*, 185 Cal. App. 4th at 231.

5         The *Mabry* court is correct that it would have been quite simple for OTS expressly to

6    bring foreclosure proceedings within § 560.2(b)(10).  However, even if it were to conclude that

7    foreclosure proceedings as such do not fall within § 560.2(b)(10), this Court nonetheless would

8    dismiss Claim 1 as preempted.  Applying the analytical framework set forth by OTS and

9    approved in *Silvas*, the first step is determining whether the state law in question falls within §

10   560.2(b).  *Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67

11   (Sep. 30, 1996)).  Assuming for purposes of discussion that the answer is no, the second step is

12   to determine whether the state law affects lending; if so, a presumption arises that the law is

13   preempted.  *Id*. Clearly, state laws governing foreclosure proceedings affect lending.

14   Accordingly, there is a presumption that those state laws are preempted.  The presumption may

15   be rebutted only if the law in question clearly fits within § 560.2(c).  *Id*.  For these purposes,

16   paragraph (c) is intended to be interpreted narrowly, and any doubt must be resolved in favor of

17   preemption. *Id*.

18        *Mabry* does not expressly address the presumption, nor does it specify which category set

19   forth in paragraph (c) applies.  Instead, *Mabry* states generally that § 2923.5 is not preempted

20   because it can be construed very narrowly to provide only for additional time prior to foreclosure.

21   *Mabry*, 185 Cal. App. 4th at 231.  Presumably the *Mabry* court believed that § 2923.5 falls

22   within the catch-all category covering "[a]ny other law that OTS, upon review, finds:  (i)

23   [f]urthers a vital state interest; and (ii) [e]ither has only an incidental effect on lending operations

24   or is not otherwise contrary to the purposes expressed in paragraph (a) of this section."  12 C.F.R.

25   § 560.2(c)(6).  An argument certainly could be made that § 2923.5 furthers a vital state interest.

26   However, even assuming the limited construction of § 2923.5 proffered by *Mabry*, a state statute

27   that imposes additional disclosure and communications obligations upon a lender prior to

28   commencement of foreclosure proceedings is not "incidental" to lending.  Moreover, given the

7

1  statements in paragraph (a) that "OTS hereby occupies the entire field of lending regulation for

2  federal savings associations," and that "OTS intends to give federal savings associations

3  maximum flexibility to exercise their lending powers in accordance with a uniform federal

4  scheme of regulation," this Court cannot conclude that state laws that impose upon lenders

5  additional obligations related to foreclosure fall within paragraph (c).

6      Accordingly, Claim 1 will be dismissed without leave to amend as preempted by HOLA.

7  **D.    Claim 2:**

8      Claim 2 alleges violation of California Civil Code § 2934a, governing substitution of

9  trustees.  The Giordanos claim that ETS never formally substituted as the foreclosing trustee.

10  Based upon the reasoning set forth above, it appears that § 2934a may be preempted by HOLA;

11  however, because Wachovia does not argue preemption with respect to this claim, and the parties

12  have not briefed the issue, the Court will not address preemption here.  Instead Claim 2 will be

13  dismissed with leave to amend based upon the Giordanos' concession that the claim as pled is

14  defective.  The Court will grant leave to amend without prejudice to Wachovia's raising

15  preemption or other appropriate defenses in a future motion.

16  **E.    Claim 3:**

17      Claim 3 alleges promissory fraud on the basis that a Wachovia representative promised

18  orally that the Giordanos' loan would be modified and then Wachovia rejected the Giordanos'

19  application for loan modification.  As presently pled, this claim appears to be barred by the

20  statute of frauds.  *See Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544,

21  553 (2008) (an agreement to forbear on foreclosure of real property is subject to the statute of

22  frauds).  Leave to amend the claim will be granted in order that the Giordanos may attempt to

23  plead around the statute of frauds.

24  **F.    Claim 4:**

25      Claim 4 alleges financial elder abuse, specifically, that WSB misrepresented and failed to

26  disclose the terms of the loan.  Wachovia argues that to the extent California's elder abuse

27  statutes impose additional disclosure obligations upon a lender, they are preempted by HOLA.

28  The Court agrees that state laws that impose mortgage disclosure requirements are preempted;

8

1    however it is not clear that the alleged misconduct was limited to nondisclosure.  To the extent

2    that the Giordanos are pleading fraudulent, predatory practices, they may be able to make out an

3    elder abuse claim that is not preempted.  Claim 4 will be dismissed with leave to amend so that

4    the Giordanos may develop it further.

5    **G.    Claim 5:**

6            Claim 5 alleges violation of California Civil Code §§ 1920 and 1921, setting forth

7    requirements for mortgages and related disclosures.  Claims based upon these statutes fall

8    squarely within 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).  *See Mesde v. American Brokers*

9    *Conduit*, 2009 WL 1883706, at *4 (N.D. Cal. June 30, 2009); *Garcia v. Wachovia Mortg. Corp*.,

10   676 F. Supp. 2d 895, 913  (C.D. Cal. 2009).  Accordingly, Claim 5 is preempted and will be

11   dismissed without leave to amend.

12   **H.    Claim 6:**

13           Claim 6 alleges unlawful business practices in violation of California Business &

14   Professions Code § 17200 *et seq*.  The § 17200 claim is derivative of the other claims, as it is

15   based expressly upon "the above-described acts and practices."  Complt. ¶ 56.  Accordingly, the

16   § 17200 claim is subject to dismissal on the same bases as the Giordanos' other claims.  Leave to

17   amend will be granted.

18   **I.    Summary:**

19           As explained above, leave to amend will be granted with respect to Claims 2, 3, 4, and 6.

20   The Court notes, however, that some or all of these claims appear to be time-barred, as they arise

21   from alleged nondisclosures in the origination of a loan in 2005, while the present action was not

22   filed until 2010.  The Giordanos must allege all facts relevant to the applicable statutes of

23   limitation in any amended pleading.

24                                      **IV. MOTION TO STRIKE**

25           In light of the disposition of the motion to dismiss, Wachovia's motion to strike portions

26   of the complaint will be denied as moot.

27                            **V. MOTION FOR PRELIMINARY INJUNCTION**

28           A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

9

clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "To warrant injunctive relief, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Indep. Living Center of Southern Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374)). The issuance of a preliminary injunction is committed to the discretion of the District Court. *Id*.

Given that the Giordanos have failed to state a claim upon which relief may be granted, they clearly have not met this standard. Accordingly, their motion for a preliminary injunction will be denied.

## VI. ORDER

(1)     The motion for remand is DENIED;

(2)     The motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART; specifically, Plaintiffs may amend Claims 2, 3, 4, and 6. Any amended complaint shall be filed within twenty (20) days after the date of this order;

(3)     The motion to strike is DENIED AS MOOT; and

(4)     The motion for a preliminary injunction is DENIED.

DATED:  12/14/2010

_____
JEREMY FOGEL
United States District Judge

10

Case No. 5:10-cv-04661-JF
ORDER DENYING MOTION FOR REMAND ETC.
(JFLC2)