1   Mark T. Flewelling (#96465)
       mflewelling@afrct.com
2   Yaw-Jiun (Gene) Wu (#228240)
       gwu@afrct.com
3   Anglin, Flewelling, Rasmussen,
       Campbell & Trytten LLP
4   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101
5   Tel: 626.535.1900; Facsimile: 626.577.7764

6   Attorneys for Defendant
    Wachovia Mortgage, a division of Wells Fargo
7   Bank, N.A., sued as "Wells Fargo, N.A." f/k/a
    Wachovia Mortgage, FSB and f/k/a World Savings
8   Bank, FSB ("Wachovia")

9

10                          UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

12

13   JOHN H. GIORDANO and GEORGANA G.        | Case No.:  CV10-4661-JF (PVT)
     GIORDANO,
14                                            | (Hon. Jeremy Fogel)
                 Plaintiffs,
15                                            | **REQUEST FOR JUDICIAL NOTICE**
             vs.                              | **IN SUPPORT OF WACHOVIA'S**
16                                            | **MOTION TO DISMISS PLAINTIFF'S**
     WACHOVIA MORTGAGE, FSB: WELLS           | **FIRST AMENDED COMPLAINT**
17   FARGO, N.A.; ETS SERVICES, LLC and DOES |
     1 to 100, inclusive,                     | Date:   March 25, 2011
18                                            | Time:   9:00 a.m.
                 Defendants.                  | Crtrm:  3
19

20

21   **TO PLAINTIFFS, THEIR COUNSEL OF RECORD AND THE HONORABLE COURT:**

22          Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, defendant Wachovia

23   Mortgage, a division of Wells Fargo Bank, N.A., sued as "Wells Fargo, N.A." f/k/a Wachovia

24   Mortgage, FSB and f/k/a World Savings Bank, FSB ("Wachovia"), requests judicial notice of the

25   following facts and documents submitted in support of Wells Fargo's motion to dismiss plaintiffs'

26   complaint:

27          1.      Deed of Trust dated December 12, 2005, signed by plaintiffs/borrowers John N.

28   Giordano and Georgana Giordano and recorded in the Official Records of the Santa Clara County

Recorder on December 20, 2005, Document No. 18733048.  (Exhibit A is a true and correct copy.)

2.       Adjustable Rate Mortgage Note dated December 12, 2005 and signed by plaintiffs/borrowers John N. Giordano and Georgana Giordano.  (Exhibit B is a true and correct copy.)

3.       Prepayment Feature Acknowledgement dated December 12, 2005 and signed by plaintiffs/borrowers John N. Giordano and Georgana Giordano.  (Exhibit C is a true and correct copy.)

4.       Loan Program Disclosure Pick-A-Payment Loan dated December 14, 2005 and signed by plaintiffs/borrowers John N. Giordano and Georgana Giordano.  (Exhibit D is a true and correct copy.)

5.       Federal Truth in Lending Disclosure Required by Regulation Z dated December 14, 2005 and signed by plaintiffs/borrowers John N. Giordano and Georgana Giordano.  (Exhibit E is a true and correct copy.)

6.       Substitution of Trustee recorded in the Official Records of the Santa Clara County Recorder's Office on November 12, 2009 as Document No. 20504419.  (Exhibit F is a true and correct copy.)

7.       Certificate of Corporate Existence dated April 21, 2006 issued by the Office of Thrift Supervision, certifying that World Savings Bank, FSB, is a federal savings bank. (Exhibit G is a true and correct copy.)

8.       Letter dated November 19, 2007 on the letterhead of the Office of Thrift Supervision, Department of the Treasury ("OTC") authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB.  (Exhibit H is a true and correct copy.)

9.       Charter of Wachovia Mortgage, FSB, dated December 31, 2007, reflecting in Section 4 that it is subject to the Home Owners' Loan Act ("HOLA") and the OTS.  (Exhibit I is a true and correct copy.)

10.       Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank

1  Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A. (Exhibit J is a true

2  and correct copy.)

3      Grounds for judicial notice of Exhibits A and F are that they are true and correct copies of

4  the official public records of the Santa Clara County Recorder's Office, whose authenticity is

5  capable of accurate and ready determination by resort to sources whose accuracy cannot

6  reasonably be questioned. See Fed. R. Evid. 201(b); *Gamboa v. Tr. Corps & Cent. Mortg. Loan*

7  *Servicing Co.*, 2009 U.S. Dist. LEXIS 19613 *4-*10 (N.D. Cal. Mar. 12, 2009) (Court took

8  judicial notice of recorded documents related to the foreclosure sale, including grant deed and

9  deed of trust.  These documents are also part of the public record and are easily verifiable. See

10  Fed. R. Evid. 201(b); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992) (holding that

11  notice may be taken of facts capable of accurate and ready determination by resort to sources

12  whose accuracy cannot reasonably be questioned)); *Velazquez v. GMAC Mortg. Corp.*, 2008 U.S.

13  Dist. LEXIS 108215, *13 (C.D. Cal. 2008).

14      Grounds for judicial notice of Exhibits B through E are that they are true and correct

15  copies of documents referred to in the complaint and/or forms the basis of plaintiffs' claims, and

16  their  authenticity is not believed to be in question. A court may consider evidence on which the

17  complaint "necessarily relies" if (1) the complaint refers to the document; (2) the document is

18  central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to

19  the 12(b)(6) motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Parrino v. FHP, Inc.*

20  146 F.3d 699, 706 (9th Cir. 1998) (plaintiff may not deliberately omit references to documents

21  upon which his claim is based to survive a 12(b)(6) motion); *Branch v. Tunnell*, 14 F.3d 499,

22  453-54 (9th Cir. 1994) (documents that are not attached to the complaint may be incorporated by

23  reference if the plaintiff has referred to the document in the complaint or if the document forms

24  the basis of the plaintiff's claims); *Chlarson v. Wachovia Mortgage*, 2009 U.S. Dist. LEXIS

25  99307, * 11 (C.D. Cal. 2009)(considering signed loan disclosures in granting a motion to dismiss

26  with prejudice).

27      Grounds for judicial notice of Exhibits G through J are that they are copies of documents

28  reflecting official acts of the legislative and executive departments of the United States,

1   pursuant to California Evidence Code § 452. Furthermore, judicial notice is appropriate for

2   information obtained from governmental websites. *Paralyzed Veterans of Am. v. McPherson*,

3   2008 U.S. Dist. LEXIS 69542, *17-18 (N.D. Cal. Sept. 8, 2008) (court took judicial notice of

4   information appearing on and printed from official government websites -- citing numerous

5   decisions from federal circuits and district courts all approving judicial notice of information

6   obtained from government websites). *Hite v. Wachovia Mortg.*, 2010 U.S. Dist. LEXIS 57732,

7   *6-9 (E.D. Cal. June 10, 2010 (court took judicial notice of the exact documents Wachovia

8   introduces in Exhibits G through J).

9

10                                          Respectfully submitted,

    Dated: January 19, 2011                ANGLIN, FLEWELLING, RASMUSSEN,
11                                              CAMPBELL & TRYTTEN LLP

12

13                                         By: _____ /s/ *Yaw-Jiun Wu* _____
                                               Yaw-Jiun (Gene) Wu
14                                             Attorneys for Defendant
                                               Wachovia Mortgage, a division of Wells Fargo
15                                             Bank, N.A., sued as "Wells Fargo, N.A." f/k/a
                                               Wachovia Mortgage, FSB and f/k/a World
16                                             Savings Bank, FSB

17

18

19

20

21

22

23

24

25

26

27

28

4                CASE NO. CV10-4661 -JF (PVT)
                                                                  REQUEST FOR JUDICIAL NOTICE IN
                                                                  SUPPORT OF MOTION TO DISMISS FAC

EXHIBIT A

**RECORDING REQUESTED BY:**
Chicago Title Company
Escrow #98402192-JL CUP
**AND WHEN RECORDED MAIL TO**
WORLD SAVINGS BANK
FINAL DOCUMENTATION CLOSING DEPT.
P.O.BOX 659548
SAN ANTONIO, TX 78265-9548

Escrow No.: 05-98402192-JL
Locate No.: CACTI7743-7743-2984-0098402192
Title No.: 05-98402192-LD

DOCUMENT: 18733048          Pages: 18

| | |
|---|---|
| Fees | 60 00 |
| Taxes .. | |
| Copies.. | |
| AMT PAID | 60 00 |

BRENDA DAVIS                        RDE # 001
SANTA CLARA COUNTY RECORDER         12/20/2005
Recorded at the request of          8:00 AM
Chicago Title

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DEED OF TRUST

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
(Additional recording fee applies)

(recoverch)(10-04)

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0041576729

NOTE AMOUNT: $688,000.00

FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$860,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    (A)   Security Instrument. This Deed of Trust, which is dated **December 12, 2005,** will be called the
"Security Instrument."

    (B)   Borrower.   JOHN N. GIORDANO AND GAYLE GEORGANA GIORDANO, HUSBAND AND WIFE
sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be
called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of
the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

SD001A (2004-03-2)        DEED OF TRUST-ADJUSTABLE      CA
DEFERRED INTEREST           Page 1

LENDER'S USE ONLY

0 0 3

0041576729

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$688,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 15, 2036** ("Maturity Date").

**(E) Property.** The property that is described below In Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)  pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)  pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)  The Property which is located at **1136 SPECIALE WAY, SAN JOSE, CA  95125-4249**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)  All buildings and other improvements that are located on the Described Property;

EXHIBIT A to RJN iso MTD FAC
Page No. 7

0041576729

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

IV.    **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

1.    **BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.    **PAYMENTS FOR TAXES AND INSURANCE**

(A)    **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

0041576729

**(B)      Escrow Accounts**

        Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

        The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

        If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

        Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

EXHIBIT A to RJN iso MTD FAC
Page No. 9

0041576729

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

EXHIBIT A to RJN iso MTD FAC
Page No. 10

0041576729

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

EXHIBIT A to RJN iso MTD FAC
Page No. 11

0041576729

7. **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8. **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9. **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

EXHIBIT A to RJN iso MTD FAC
Page No. 12

0041576729

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

0041576729

### 13.   LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1136 SPECIALE WAY, SAN JOSE, CA  95125–424**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.   GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.   BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD0011 (2004-03-2)                                 DEED OF TRUST-ADJUSTABLE                                 **CA**
                                                              Page 9

EXHIBIT A to RJN iso MTD FAC
Page No. 14

0041576729

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

## 18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

## 19.    CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

## 20.    LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

## 21.    WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

## 22.    CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

## 23.    MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

## 24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                          **CA**
                                                  Page 10

0041576729

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                          **CA**
                                                    Page 11

0041576729

**28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.  RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.  STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-2)            DEED OF TRUST-ADJUSTABLE            **CA**
                                      Page 13

0041576729

**31.   ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

EXHIBIT A to RJN iso MTD FAC
Page No. 18

0041576729

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

#### BORROWER(S):

_____ (Seal)
JOHN N. GIORDANO

_____ (Seal)
GATIE GIORDANO
GEORGANA

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO.  **0041576729**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **SANTA CLARA** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

All of Lot 333, as shown upon that certain Map entitled, "Tract No. 1834 Lincoln Glenn Subdivision Unit No. 8", which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California, on April 9, 1957 in Book 81 of Maps, at Pages 2 and 3.

Excepting therefrom the underground water with no right of surface entry from Zisch-Nelson-Hauck Co., A Partnership, to San Jose Water Works, dated April 29, 1957 and recorded April 30, 1957 in Book 3787 Official Records, Page 463, Santa Clara County Records.

APN: 439-47-039

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

STATE OF CALIFORNIA        )
                          )
COUNTY OF SANTA CLARA

On ___12/14/05_____ before me,___Jenny Leung_____.
a Notary Public in and for said State, personally appeared _____
_*John N. Giordano and Georgana Giordano *_____, personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signed_____

JENNY LEUNG
COMM. # 1380050
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
COMM. EXP. OCT. 15, 2006

EXHIBIT B

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT
AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES
AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE.

LOAN NUMBER  0041576729                          DATE  **December 12, 2005**

BORROWER(S)  **JOHN N. GIORDANO AND GAYLE GIORDANO, HUSBAND AND WIFE**  sometimes called "Borrower"
and sometimes simply called "I" or "me "

PROPERTY ADDRESS  **1136 SPECIALE WAY, SAN JOSE, CA  95125-4249**

1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U S  **$688,000.00** , called "Principal," plus interest, to the order of the
Lender  The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,**, ITS SUCCESSORS AND/OR
ASSIGNEES, or anyone to whom this Note is transferred

2.  INTEREST

(A)    Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid   I will pay interest at the yearly rate of
**6.710%**  The interest rate I will pay  may change as described in this Section 2  Interest will be charged on the basis of a twelve
month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of
this Note

(B)    Interest Change Dates
The interest rate I will pay may change on the **15th** day of **February, 2006** and on the same day every month thereafter  Each
date on which my interest rate could change is called an "Interest Change Date " The new rate of interest will become effective on
each Interest Change Date

(C)    Interest Rate Limit
My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap "

SD253A (2004-03-1)                    ADJUSTABLE NOTE              CA
                                          Page 1

LENDER'S USE ONLY

0  0  1

0041576729

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.650** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if  (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **February 15, 2006.** I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on **January 15, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 2,612.35.** This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **February, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

SD2538 (2004-03-1)      [B01 (2004-03-1)]                    ADJUSTABLE NOTE                                C3A
COSI                                                           Page 2

**EXHIBIT B to RJN iso MTD FAC**
**Page No. 23**

0041576729

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

EXHIBIT B to RJN iso MTD FAC
Page No. 24

0041576729

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses may include, for example, reasonable attorneys' fees and court costs

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **1136 SPECIALE WAY, SAN JOSE, CA  95125–424**, or at a single alternative address if I give the Lender notice of my alternative address  I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who takes over these obligations is also obligated to keep all of the promises made in this Note  The Lender may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment" means the right to require the Lender to demand payment of amounts due  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**EXHIBIT B to RJN iso MTD FAC**
**Page No. 25**

0041576729

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)   Lender approves the creditworthiness of the transferee in writing,

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**12.  GOVERNING LAW; SEVERABILITY**
     This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

**13.  CLERICAL ERRORS**
     In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**
     If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

EXHIBIT B to RJN iso MTD FAC
Page No. 26

SIGNATURE PAGE                                              0041576729

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____        (Seal)
JOHN N. GIORDANO

_____        (Seal)
GEORGANA GIORDANO

SC253 (2004-03-1)    [W14 (2004-03-01)]           Page 6 of 6                    CA

EXHIBIT B to RJN iso MTD FAC
Page No. 27

EXHIBIT C

(Page 1 of 2)

| WORLD SAVINGS | PREPAYMENT FEATURE ACKNOWLEDGEMENT |

LOAN NUMBER  0041576729

DATE: 12/12/05
LOAN PROGRAM: ADJUSTABLE RATE MORTGAGE
PICK-A-PAYMENT LOAN

BORROWER(S)
JOHN N. GIORDANO
DAVID GIORDANO
GEORGANA

PROPERTY ADDRESS
1136 SPECIALE WAY
SAN JOSE, CA  95125-4249

You have selected a loan program that includes a prepayment fee provision  The following is the prepayment fee provision that will appear in your loan documents:

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment".  When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.   I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

By signing below, I/we acknowledge and agree that·

1.   As a federally chartered savings institution acting in accordance with the federal laws and regulations governing federally chartered savings institutions, WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND OR ASSIGNEES, has an enforceable legal right to the prepayment fee described above, even if there is a state or local law to the contrary

2.   The prepayment fee provision written above constitutes the entire prepayment fee provision that will appear in my/our Note and supersedes any other written or oral discussion to the contrary.

3    The fact that there is a prepayment fee provision is disclosed on the enclosed Truth-in-Lending Disclosure

4    I/We have been given an opportunity to discuss the prepayment fee provision with a Loan Representative and I/we fully understand it.

5    If I/we select a different loan program subsequent to the date of this Acknowledgement, World will provide a new Acknowledgement that will supersede this and other forms related to the above named loan program  This Acknowledgement supersedes any previous Acknowledgement given to me/us

6    I/We have received a copy of this form

**SIGNATURE PAGE FOLLOWS**

LENDER'S USE ONLY

0  6  7

EXHIBIT C to RJN iso MTD FAC
Page No. 28

(Page 2 of 2)

0041576729

| PREPAYMENT FEATURE ACKNOWLEDGEMENT - SIGNATURE PAGE |
|---|

BORROWER(S) SIGNATURE(S):

_John N. Giordano_
JOHN N. GIORDANO

_Georgana Giordano_
~~ANNE~~ GIORDANO
GEORGANA

N.J

NOTE:
AT YOUR REQUEST AND SUBJECT TO THE FOLLOWING REQUIREMENTS, WORLD WILL WAIVE
OR REFUND THE PREPAYMENT FEE ON THIS LOAN IF A NEW FIRST MORTGAGE LOAN THAT
REPLACES THIS LOAN IS OBTAINED FROM WORLD.

THE NEW LOAN MAY NOT INCLUDE A PAYMENT BY WORLD TO YOU, THE BUYER OF THIS
PROPERTY, A MORTGAGE BROKER, OR ANY OTHER THIRD PARTY. THE NEW LOAN MUST BE
SECURED BY PROPERTY THAT MEETS WORLD'S APPRAISAL STANDARDS AND IS LOCATED
WITHIN WORLD'S LENDING TERRITORY.  THE NEW LOAN MUST MEET WORLD'S THEN
CURRENT UNDERWRITING CRITERIA.*

THERE ARE SEVERAL WAYS TO OBTAIN A NEW LOAN. THEY ARE:

-  YOU OBTAIN A NEW FIRST MORTGAGE LOAN FROM WORLD ON THIS PROPERTY;
-  YOU OBTAIN A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY AND THIS
   LOAN IS PAID IN FULL AT THE SAME TIME AS THE CLOSING OF THE NEW
   LOAN;
-  YOU OBTAIN AND CLOSE A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY
   NO LATER THAN 180 DAYS AFTER THIS LOAN IS PAID IN FULL (IN THIS
   CASE WORLD WILL REFUND THE PREPAYMENT FEE UPON YOUR WRITTEN
   REQUEST); OR
-  YOU SELL THIS PROPERTY AND THE BUYER FINANCES THE PURCHASE WITH A
   NEW LOAN FROM WORLD.

* TERRITORIES IN WHICH WORLD MAKES LOANS, AS WELL AS WORLD'S UNDERWRITING
CRITERIA, INCLUDING BUT NOT LIMITED TO APPRAISAL STANDARDS, LOAN-TO-VALUE
RATIOS, AND STANDARDS OF CREDITWORTHINESS, ARE SUBJECT TO CHANGE BY WORLD
WITHOUT NOTICE.

EXHIBIT C to RJN iso MTD FAC
Page No. 29

EXHIBIT D

0041576729

# LOAN PROGRAM DISCLOSURE

# PICK-A-PAYMENT℠ LOAN

### ADJUSTABLE RATE MORTGAGE
### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX (COSI)

This disclosure describes in a question-and-answer format important features of the Pick-a-Payment℠ Loan Program you are considering Federal Reserve Regulation Z and the rules and regulations of the federal Office of Thrift Supervision require that World give this disclosure to you  This disclosure is accurate as of the date of printing  However, World reserves the right to make subsequent changes to it at any time regarding any matter it covers  Such changes may occur because of changes in policy, law or regulation or for any other reason  Some terms of loans on non-owner occupied properties may be different from those described in this disclosure  If you are considering a loan on a non-owner occupied property, please ask a Loan Representative about the differences

**CAN THE INTEREST RATE AND PAYMENT AMOUNT CHANGE?**
Yes  Movement of an index causes the interest rate and payment amount to change  An index is an independent measure of interest rate activity

**WHAT IS THE INDEX?**
The index for this loan is the weighted average of the rates of interest on the deposit accounts (sometimes called cost of savings) of the federally insured depository institution subsidiaries of Golden West Financial Corporation ("COSI" or "Index")  Golden West Financial Corporation is a holding company listed on the New York Stock Exchange under the trading symbol "GDW"  All of the depository institution subsidiaries of GDW currently operate under the name World Savings

The COSI consists of the weighted annualized rate of interest in effect on deposit accounts, adjusted for the effects of financial instruments related to deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts  It does not include accounts owned by GDW or its subsidiaries

GDW computes the COSI as of the last day of each calendar month and announces it on or near the last business day prior to the fifteenth day of the following calendar month  For example, GDW announces the February COSI on or near the last business day prior to the fifteenth of March  It is in effect until the announcement of the March COSI in April

**WHERE CAN I GET INFORMATION ABOUT THE INDEX?**
You can get information about the COSI by

- writing to World Savings
  P O  Box 659558
  San Antonio, Texas 78265-9558
  Attn  Customer Service Department, or
- telephoning at (800) 642-0257

**HOW DOES WORLD DETERMINE INTEREST RATE CHANGES?**
World determines interest rate changes by adding an amount (margin) that is fixed for the life of the loan to the current index  The current index is the most recently announced COSI value available on the date of each interest rate change  Please ask for World's current margin and interest rate

**HOW DOES WORLD DETERMINE PAYMENT CHANGES?**
Subject to the payment change limits described below, World determines payment changes by calculating payments that amortize the loan  Amortize means to pay off the loan at its then current interest rate over its remaining term with equal payments

**IS THE INITIAL INTEREST RATE BASED ON THE INDEX PLUS THE MARGIN?**
Yes

**HOW IS THE INITIAL PAYMENT AMOUNT ESTABLISHED?**
You select an initial payment amount from a range of payment amounts provided by World  The range includes a minimum and a maximum initial payment amount  The maximum initial payment will not fully amortize the loan at the initial interest rate  The initial payment amount you select may not be sufficient to pay the full amount of interest due at the initial interest rate  This will cause the loan amount to increase as described below in the section "How Does The Principal Balance Change?" Please ask for the range of initial payments for the loan you are considering

**HOW OFTEN CAN THE INTEREST RATE CHANGE?**
Monthly, beginning on the due date of the first regularly scheduled payment

**HOW OFTEN CAN THE PAYMENT CHANGE?**
Annually  The payment can change every 12 payments beginning with the 13th payment  Each date on which the payment may change is a "Payment Change Date"

**ARE THERE ANY LIMITS TO THE AMOUNT THE INTEREST RATE MAY CHANGE?**
Yes  The maximum interest rate limit ("Lifetime Rate Cap") is between 2 000 and 7 000 percentage points over the initial index value plus margin  Please ask for World's current Lifetime Rate Cap

**ARE THERE ANY LIMITS TO THE AMOUNT THAT PAYMENTS MAY CHANGE?**
Yes  The monthly payment cannot increase ("Payment Cap") more than 7-1/2% each year
However,
- the Payment Cap does not apply on the 10th, 15th, 20th, 25th or final Payment Change Dates,
- the Payment Cap does not apply if the principal balance reaches the limits described in the answer to the next question

**HOW DOES THE PRINCIPAL BALANCE CHANGE?**
The principal balance (loan amount) can change monthly

When the monthly payment is more than sufficient to pay the full amount of interest due, World subtracts the amount that exceeds the interest due from the principal balance, resulting in a principal reduction

At various times during the life of your loan the monthly payment may not be sufficient to pay the full amount of interest due  This can occur if the initial payment amount that you select is less than the full amount of interest due  This can also result from increases in the interest rate prior to the Payment Change Date or from a monthly payment that did not increase sufficiently to pay the full amount of interest due, because of the 7-1/2% Payment Cap

LENDER'S USE ONLY

0 6 5

(Page 2 of 2)

0041576729

If the monthly payment is not sufficient to pay the full amount of interest due, World adds this accrued but unpaid interest, called Deferred Interest, to the unpaid principal balance of the loan. Until repaid, Deferred Interest bears interest at the interest rate of the loan.

The principal balance may never exceed

- 125% of the original principal balance amount for a loan that had an original loan amount of 85% or less of the property's appraised value or sales price (whichever is less), or

- 110% of the original principal balance amount for a loan that had an original loan amount greater than 85% of the property's appraised value or sales price (whichever is less)

If Deferred Interest caused the principal balance to reach these limits, World would immediately increase the payment without regard to the Payment Cap. The increased payment would pay off the loan at the then current interest rate and remaining term.

**WHAT ARE THE INITIAL AND MAXIMUM INTEREST RATES AND PAYMENTS FOR A $10,000 LOAN ORIGINATED IN SEPTEMBER OF 2005?**

| | Initial payment selected * | Maximum payment and year in which maximum payment occurs ** | |
|---|---|---|---|
| **5 YEAR TERM** | | | |
| Minimum initial payment | $175.06 | $308.87 | 5th year |
| Maximum initial payment | $192.12 | $294.25 | 5th year |
| **15 YEAR TERM** | | | |
| Minimum initial payment | $64.13 | $182.49 | 5th year |
| Maximum initial payment | $82.98 | $206.51 | 11th year |
| **30 YEAR TERM** | | | |
| Minimum initial payment | $36.72 | $136.60 | 3rd year |
| Maximum initial payment | $58.29 | $137.81 | 5th year |

* The initial interest rate in the examples is 5.740%, which reflects an Index value of 2.890% plus a margin of 2.850%. Your initial interest rate may be different.

** The maximum interest rate in these examples is 12.740%, which reflects a Lifetime Rate Cap of 7.000% over the initial Index value plus margin. Your Lifetime Rate Cap may be different.

Your monthly payment can increase or decrease substantially based on changes in the interest rate.

**HOW CAN I CALCULATE THE INITIAL PAYMENT FOR THE AMOUNT I PLAN TO BORROW?**

To see what the initial payments would be

step 1   divide the amount you plan to borrow by $10,000, and then

step 2   multiply the resulting amount by the monthly payment shown under the "Initial payment selected" column of the immediately previous question

For example,

for a 5 year term, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $175.06 = $2,100.72 (minimum initial payment)
or
12 X $192.12 = $2,305.44 (maximum initial payment)

**IMPORTANT - SIGNATURE**
I have received a copy of this disclosure describing the Pick-a-Payment Loan Program. I understand that this disclosure is neither a commitment to make a loan nor a binding contract. The complete contractual terms and conditions of the loan are in the Note, Security Instrument, Modification(s) and Rider(s), if any.

for a 15 year term, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $64.13 = $769.56 (minimum initial payment)
or
12 X $82.98 = $995.76 (maximum initial payment)

for a 30 year term, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $36.72 = $440.64 (minimum initial payment)
or
12 X $58.29 = $699.48 (maximum initial payment)

**WHEN WILL I RECEIVE NOTICES OF CHANGES TO THE LOAN? WHAT INFORMATION WILL THEY INCLUDE?**
World sends a written notice at least 25 days before each Payment Change Date. The notice includes information about the payment amount, interest rate and loan balance changes.

**DOES THIS LOAN HAVE AN ASSUMPTION/DUE-ON-SALE PROVISION?**

If at origination your loan is not secured by additional non-real estate collateral, World will give written approval for a transfer (assumption) and the buyer (transferee) may assume your loan at its current interest rate provided

1)   the buyer meets World's then current credit standards,
2)   the buyer makes a cash downpayment sufficient to meet World's then current underwriting standards,
3)   World receives an assumption fee,
4)   no previous transfer of the property has occurred since the original date of the loan, and
5)   you and the buyer sign all required assumption documents

The buyer might not receive the same Lifetime Rate Cap that you originally did. The buyer could receive a higher Lifetime Rate Cap based on then current market conditions.

If the loan program you are considering requires additional non-real estate collateral at the time of origination, the loan will not be assumable. You will receive additional information that will explain the loan program in greater detail.

Under certain circumstances, World could declare the entire outstanding loan amount immediately due and payable. Failure to pay could then result in the forced sale of the property securing the loan. This could occur

- if there is more than one sale or transfer of the property, or

- if you sell or transfer the property to anyone without obtaining World's prior written consent

**DOES THIS LOAN HAVE A PREPAYMENT CHARGE PROVISION?**

Some loan programs have a provision that requires that you pay a fee (a prepayment charge) if you make certain payments of principal before they are due (prepayments). Be sure to ask whether the loan program you are considering has a prepayment charge provision.

If the loan program you are considering does have a prepayment charge provision, you will receive several documents during the processing of your loan that explain the prepayment charge in detail.

**HOW CAN I GET INFORMATION ABOUT WORLD'S OTHER LOAN PROGRAMS?**
A Loan Representative will be happy to answer any questions you have and provide you with disclosures for other adjustable rate loan programs.

*Jerry N Giordano*   Georgana Giordano   1136 Specialli Way, San Jose, CA 95125
Print Name                                                                Property Address
*John J Giordano*   *Georgana Giordano*   12-09-05   12/14/05
Signature                                                                Date

Please return a signed copy of this disclosure to World and retain a copy for your records.

AD1608 (2004-03-3)   [801 (2004-03-3)]   Page 2 of 2   LOAN TYPE 247
COSI - PICK-A-PAYMENT LOAN                                                     CA

EXHIBIT E

(Page 1 of 1)

## WORLD SAVINGS | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z

Customer's Name
JOHN N. GIORDANO, ET AL.

Date  **December 12, 2005**
Loan No  **0041576729**

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate | FINANCE CHARGE<br><br>The dollar amount the credit will cost you | Amount Financed<br><br>The amount of credit provided to you or on your behalf | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled | Total Sale Price<br><br>The total price of your purchase on credit including your down payment of<br><br>**Not Applicable** |
|---|---|---|---|---|
| **6.723 %** | **$ 1,103,556.73** | **$ 683,063.10** | **$ 1,786,619.83** | **Not Applicable** |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due:<br>MONTHLY beginning on |
|---|---|---|
| 12 | $2,612.35 | 02/15/06 |
| 12 | 2,808.28 | 02/15/07 |
| 12 | 3,018.90 | 02/15/08 |
| 12 | 3,245.32 | 02/15/09 |
| 12 | 3,488.72 | 02/15/10 |
| 12 | 3,750.37 | 02/15/11 |
| 12 | 4,031.65 | 02/15/12 |
| 12 | 4,334.02 | 02/15/13 |
| 12 | 4,659.07 | 02/15/14 |
| 12 | 5,008.50 | 02/15/15 |
| 239 | 5,596.40 | 02/15/16 |
| 1 | 5,594.07 | 01/15/36 |

**VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.**

This loan **DOES NOT HAVE A DEMAND FEATURE.**

Insurance    You may obtain property insurance from anyone you want who is acceptable to the Lender

Security    You are giving a security interest in the real property located at **1136 SPECIALE WAY, SAN JOSE, CA 95125-4249**

Filing Fees    $    **100.00**

Late Charge    If a payment is late, you will be charged **5.00%** of the payment

Prepayment    If you pay off the loan early, you **MAY** have to pay a penalty and you **WILL NOT** be entitled to a refund of **ANY PART OF THE FINANCE CHARGE ALREADY PAID.**

Assumption    **SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.**

Due on Sale    If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable  In this event failure to pay all the sums declared due and payable may result in the forced sale of the property

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE

_John J. Giordano_                                    12-14-05

_Georgiana Giordano_                                    12/14/05
                                                        Date

GF424A1 (2004-03-1)        UNIVERSAL                                    CA
FINAL        DISTRIBUTION    1 COPY-RETURN SIGNED TO LENDER    1 COPY-CUSTOMER    2 COPIES-FILE    LENDER'S USE ONLY

0  7  3

(Page 1 of 1)

## WORLD SAVINGS | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z

Customer's Name
JOHN N. GIORDANO, ET AL.

Date **December 12, 2005**
Loan No **0041576729**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | The total price of your purchase on credit including your down payment of **Not Applicable** |
| 6.723 % | $1,103,556.73 | $683,063.10 | $1,786,619.83 | Not Applicable |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: MONTHLY beginning on |
|---|---|---|
| 12 | $2,612.35 | 02/15/06 |
| 12 | 2,808.28 | 02/15/07 |
| 12 | 3,018.90 | 02/15/08 |
| 12 | 3,245.32 | 02/15/09 |
| 12 | 3,488.72 | 02/15/10 |
| 12 | 3,750.37 | 02/15/11 |
| 12 | 4,031.65 | 02/15/12 |
| 12 | 4,334.02 | 02/15/13 |
| 12 | 4,659.07 | 02/15/14 |
| 12 | 5,008.50 | 02/15/15 |
| 239 | 5,596.40 | 02/15/16 |
| 1 | 5,594.07 | 01/15/36 |

**VARIABLE RATE:** THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.

This loan DOES NOT HAVE A DEMAND FEATURE.

Insurance   You may obtain property insurance from anyone you want who is acceptable to the Lender

Security   You are giving a security interest in the real property located at 1136 SPECIALE WAY, SAN JOSE, CA 95125-4249

Filing Fees   $ 100.00

Late Charge   If a payment is late, you will be charged 5.00% of the payment

Prepayment   If you pay off the loan early, you MAY have to pay a penalty and you WILL NOT be entitled to a refund of ANY PART OF THE FINANCE CHARGE ALREADY PAID.

Assumption   SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS -- SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.

Due on Sale   If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable. In this event failure to pay all the sums declared due and payable may result in the forced sale of the property

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE

John N. Giordano

JOHN N. GIORDANO

12-14-05
Date



073
LENDER'S USE ONLY

GF424A1 (2004-03-1)   UNIVERSAL   CA
FINAL   DISTRIBUTION   1 COPY-RETURN SIGNED TO LENDER   1 COPY-CUSTOMER   2 COPIES-FILE

EXHIBIT E to RJN iso MTD FAC
Page No. 33

(Page 1 of 1)

| **WORLD SAVINGS** | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z |
|---|---|

Customer's Name
JOHN N. GIORDANO, ET AL.

Date **December 12, 2005**
Loan No  **0041576729**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | The total price of your purchase on credit including your down payment of |
| | | | | **Not Applicable** |
| **6.723 %** | **§ 1,103,556.73** | **$683,063.10** | **$1,786,619.83** | **Not Applicable** |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: MONTHLY beginning on |
|---|---|---|
| 12 | $2,612.35 | 02/15/06 |
| 12 | 2,808.28 | 02/15/07 |
| 12 | 3,018.90 | 02/15/08 |
| 12 | 3,245.32 | 02/15/09 |
| 12 | 3,488.72 | 02/15/10 |
| 12 | 3,750.37 | 02/15/11 |
| 12 | 4,031.65 | 02/15/12 |
| 12 | 4,334.02 | 02/15/13 |
| 12 | 4,659.07 | 02/15/14 |
| 12 | 5,008.50 | 02/15/15 |
| 239 | 5,596.40 | 02/15/16 |
| 1 | 5,594.07 | 01/15/36 |

**VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.**

This loan **DOES NOT HAVE A DEMAND FEATURE.**

Insurance   You may obtain property insurance from anyone you want who is acceptable to the Lender

Security   You are giving a security interest in the real property located at **1136 SPECIALE WAY, SAN JOSE, CA 95125-4249**

Filing Fees   $   **100.00**

Late Charge   If a payment is late, you will be charged **5.00%** of the payment

Prepayment   If you pay off the loan early, you **MAY** have to pay a penalty and you **WILL NOT** be entitled to a refund of **ANY PART OF THE FINANCE CHARGE ALREADY PAID.**

Assumption   **SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.**

Due on Sale   If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable. In this event failure to pay all the sums declared due and payable may result in the forced sale of the property

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE

*Giorgiana Giordano*

JN GIORDANO

GEORGANA

12/14/05
Date

GF424A1 (2004-03-1)   UNIVERSAL   CA
FINAL   DISTRIBUTION   1 COPY-RETURN SIGNED TO LENDER   1 COPY-CUSTOMER   2 COPIES-FILE

073

LENDER'S USE ONLY

EXHIBIT E to RJN iso MTD FAC
Page No. 34

EXHIBIT F

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

(818) 260-1600

D9058645

TS NO : WC-224988-C
LOAN NO : 0041576729

DOCUMENT: 20504419

| | |
|---|---|
| Pages: | 2 |
| Fees . . | 15 00 |
| Taxes.. | |
| Copies. | |
| AMT PAID | 15 00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 001
11/12/2009
10:41 AM

SPACE ABOVE THIS LINE FOR RECORDER S USE

## SUBSTITUTION OF TRUSTEE

   WHEREAS, JOHN N GIORDANO AND GEORGANA GIORDANO,HUSBAND AND WIFE was the original Trustor, **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION** was the original Trustee, and **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, A FEDERAL SAVINGS BANK** was the original Beneficiary under that certain Deed of Trust dated **12/12/2005** and recorded on **12/20/2005** as Instrument No. 18733048, in Book , Page  of Official Records of **Santa Clara** County, California; and

   WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

   WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

   NOW, THEREFORE, the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

 **Dated :**

Wachovia Mortgage, FSB. f.k.a. World Savings Bank, FSB

*Keo Vang*

Keo Vang                    **Attorney in Fact**

State of      Minnesota      } ss.
County of      Dakota         }

On 2/11/09 before me, Shoua Moua                    Notary Public, personally appeared      Keo Vang      who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of      Ca      that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SHOUA MOUA
NOTARY PUBLIC • MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012

# AFFIDAVIT OF MAILING
# FOR SUBSTITUTION OF TRUSTEE BY CODE

T.S. No. :WC-224988-C

Trustor  :JOHN N GIORDANO AND GEORGANA GIORDANO HUSBAND AND WIFE

I, Ileanna Petersen, TRUSTEE SALE OFFICER, declare: That I am an officer, agent or employee of ETS Services, LLC
whose business address is:

2255 North Ontario Street, Suite 400 Burbank, California 91504-3120

I am over the age of eighteen years; On 11/10/2009, by Certified and First Class mail, enclosed in a sealed envelope with postage fully prepaid, I deposited in the United States Mail, a copy of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/26/2009

Ileanna Petersen, Trustee Sale Officer

EXHIBIT G



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

**April 21, 2006**

## CERTIFICATE OF CORPORATE EXISTENCE

**REFERENCE:** World Savings Bank, FSB
Oakland, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1. World Savings Bank, FSB, Oakland, California, was chartered under the laws of the United States to transact the business of a Federal savings bank;

2. The charter of World Savings Bank, FSB, Oakland, California, is in full force and effect;

3. The Office of Thrift Supervision has not appointed a conservator or receiver for World Savings Bank, FSB, Oakland, California; and

4. As of April 21, 2006, World Savings Bank, FSB, Oakland, California, is operating as a BIF-insured financial institution.

**Nadine Y. Washington**
**Corporate Secretary**

EXHIBIT H



**Office of Thrift Supervision**                                    *Nicholas J. Dyer*
Department of the Treasury                                  *Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

**EXHIBIT H to RJN iso MTD FAC**
**Page No. 38**

EXHIBIT I

Charter No. <u>7971</u>
Docket No. 12642

## CHARTER OF WACHOVIA MORTGAGE, FSB

Section 1.  <u>Corporate title.</u>  The full corporate title of the savings bank is Wachovia Mortgage, FSB ("the savings bank").

Section 2.  <u>Office.</u>  The home office of the savings bank shall be located in North Las Vegas, Nevada.

Section 3.  <u>Duration.</u>  The duration of the savings bank is perpetual.

Section 4.  <u>Purpose and Powers.</u>  The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision ("OTS").

Section 5.  <u>Capital Stock.</u>  The total number of share of all classes of the capital stock which the savings bank has the authority to issue is 30,000, all of which shall be common stock of par value of $10.00 per share.  The shares may be issued from time to time as authorized by the board of directors without the approval of its shareholders, except as otherwise provided in this Section 5 or to the extent that such approval is required by governing law, rule, or regulation.  The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value.  Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank.  The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted to the savings bank), labor, or services actually performed for the savings bank, or any combination of the foregoing.  In the absence of actual fraud in the transaction, the value such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive.  Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable.  In the case of a stock dividend, that part of the surplus of the savings bank which is transferred to stated capital upon the issuance of shares as a share dividend shall be deemed to be the consideration for their issuance.

No shares of common stock shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a director, unless the issuance or the plan under which they would be issues has been approved by a majority of the total votes eligible to be cast at a legal meeting.

336527v4

EXHIBIT I to RJN iso MTD FAC
Page No. 39

The holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for election of directors. In the event of any liquidation, dissolution, or winding up of the savings bank, the holder of the common stock shall be entitled, after payment or provision for payment of all debts and liabilities of the savings bank, to receive the remaining assets of the savings bank available for distribution, in cash or in kind. Each share of common stock shall have the same relative rights as and be identical in all respects with all the other shares of common stock.

Section 6. <u>Preemptive rights.</u> Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

Section 7. <u>Directors.</u> The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than five nor more than fifteen except when a greater number is approved by the Director of the OTS.

Section 8. <u>Amendment of charter.</u> Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is first proposed by the board of directors of the savings bank, then preliminarily approved by the OTS, which preliminary approval may be granted by the OTS pursuant to regulations specifying preapproved charter amendments, and thereafter approved by the shareholders by a majority of the total votes eligible to be cast at a legal meeting. Any amendment, addition, alternation, change, or repeal so acted upon shall be effective upon filing with the OTS in accordance with regulatory procedures or on such other date as the OTS may specify in its preliminary approval.

Attest: _____

Mark C. Treanor, Secretary
Wachovia Mortgage, FSB

Attest: _____

Benjamin P. Jenkins, III, Chairman, President & CEO
Wachovia Mortgage, FSB

Attest: _____

Secretary of the Office of Thrift Supervision

Attest: _____

Director of the Office of Thrift Supervision

Effective Date: December 31, 2007

336527v4

EXHIBIT I to RJN iso MTD FAC
Page No. 40

## SECRETARY'S CERTIFICATE
## WACHOVIA MORTGAGE, FSB

I, Hope Armstrong Howe, Assistant Secretary of Wachovia Mortgage, FSB (the "Bank") do hereby certify the following:

1. Attached hereto as Charter No. 7971, is a true and complete copy of the Charter of Wachovia Mortgage, FSB (the "Charter") effective December 31, 2007 and signed by the Secretary and the Director of the Office of Thrift Supervision, and that said Charter is now in full force and effect.

**IN WITNESS WHEREOF**, I have hereunto subscribed my name and affixed the seal of the Bank on this 16th day of March, 2009.

(SEAL)

Hope Armstrong Howe
Assistant Secretary
Wachovia Mortgage, FSB

EXHIBIT I to RJN iso MTD FAC
Page No. 41

EXHIBIT J



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Large Bank Licensing Lead Expert

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the following document(s):

### REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF WACHOVIA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

on all interested parties in said case addressed as follows:

*Served Electronically via Court's CM/ECF System:*

Stephen C. Ruehmann
Ruehmann Law Firm, P.C.
9580 Oak Avenue Parkway, Suite 15
Folsom, California 95630

*Tel: 916.988.8001 / Fax: 916.988.8002*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  This declaration is executed in Pasadena, California, on **January 19, 2011.**

| Wendy Mutum | */s/ Wendy Mutum* |
|:---:|:---:|
| *(Print Name)* | *(Signature of Declarant)* |

CASE NO. CV10-4661 -JF (PVT)
CERTIFICATE OF SERVICE