Stephen C. Ruehmann, Esq. (167533)
**RUEHMANN LAW FIRM, P.C.**
9580 Oak Avenue Parkway, Suite 15
Folsom, CA 95630
Tel (916) 988-8001
Fax (916) 988-8002

Attorneys for Plaintiffs,
JOHN H. GIORDANO and GEORGANA G. GIORDANO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| JOHN H. GIORDANO and GEORGANA G. GIORDANO,<br><br>        Plaintiffs,<br><br>vs.<br><br>WACHOVIA MORTGAGE, FSB; WELLS FARGO, N.A; ETS SERVICES, LLC and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No.: CV10-4661-JF (PVT)<br><br>**PLAINTIFFS' OPPOSITION TO WACHOVIA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 25, 2011<br>Time: 9:00 a.m.<br>Crtm: 3<br><br>**Honorable Jeremy Fogel** |

JOHN H. GIORDANO and GEORGANA G. GIORDANO ("Plaintiffs") hereby oppose the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendant, Wachovia Mortgage, a division of Wells Fargo Bank, N.A., sued as "Wells Fargo, N.A." f/k/a Wachovia Mortgage, FSB and f/k/a/ World Savings Bank, FSB.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### RELEVANT FACTS

As alleged in Plaintiffs' First Amended Complaint ("FAC"), in December 2005, Plaintiffs entered into a contract to refinance certain real property located at 1136 Speciale Way,

- 1 -
PLAINTIFFS' OPPOSITION TO WACHOVIA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

San Jose, California 95125 (the "Subject Property") using World Savings Bank, FSB ("WSB") as the lender. At the time that Plaintiff, John H. Giordano was 78 years old and Plaintiff, Georgana G. Giordano was 60 years old. WSB represented to Plaintiffs that based on their credit score and the current market conditions that they had qualified and had obtained a loan with very favorable terms. Specifically, WSB told Plaintiffs they had obtained a 30-year fully-amortized adjustable rate mortgage ("ARM") with an initial annual interest rate of 6.710%.

Plaintiffs believed the representations of WSB. Unfortunately, those representations were false and the true terms of the loan agreement are significantly different than the terms represented by WSB. The true terms are as follows: WSB gave Plaintiffs a 30-year "pick-a-payment" ARM with a 2-month "teaser" interest rate at 6.710%. Thereafter the interest rate is adjustable based on the GDW Average Deposit Account Rate (COSI) plus 3.500%, with a cap at 11.950%. Plaintiffs' loan included a negative amortization feature and a predatory and illegal prepayment penalty provision.

Plaintiffs believed that they had obtained a 30-year fully-amortized ARM with an initial annual interest rate at 6.710%. These are the terms Plaintiffs agreed to and believed were embodied in the loan agreement, as represented by WSB. Plaintiffs were unaware that the loan included a negative amortization feature and an illegal and predatory prepayment penalty. Plaintiffs were also unaware that the 6.710% disclosed interest rate would adjust before Plaintiffs' made their first payment; this disclosed interest rate was never actually applied to Plaintiffs' loan. The disclosure of an initial interest rate at 6.710% was misleading at best and fraudulent at worst.

These features were not explained to Plaintiffs, who relied on WSB – their agent – to explain the voluminous packet of loan documents and terms. Instead, a huge stack of loans documents were produced and Plaintiffs were instructed to immediately sign each document. Plaintiffs, being elderly and unsophisticated borrowers, relied on WSB – their agent – to explain the voluminous packet of loan documents. However, WSB failed to do so. Plaintiffs allege and believe that due to their advanced age and apparent naivety as to real estate and borrower qualifications, WSB recognized Plaintiffs' weaknesses and preyed upon the opportunity to

benefit from Plaintiffs' age and lack of knowledge.

In 2009, Plaintiffs began to experience severe financial problems due in part to the increasing interest rate and mortgage payments and began to struggle to make their monthly mortgage payments. It was not until this point in time that Plaintiffs began to suspect that the true terms and conditions of the loan agreement were significantly different than the terms previously represented by WSB.

On August 11, 2009, a Notice of Default ("NOD") was recorded by ETS, acting as the agent of Beneficiary. On November 12, 2009 a Notice of Trustee's Sale ("NOS") was recorded by ETS, the foreclosing Trustee. After receiving a copy of the NOS, Plaintiffs contacted WACHOVIA to ask about options available for assistance with their mortgage payment or if they could receive a loan modification. Without assessing their financial situation or exploring other alternatives to foreclosure, WACHOVIA simply told Plaintiffs to submit a loan modification application and documents verifying their current financial circumstances.

Plaintiffs promptly complied with WACHOVIA's request by submitting a loan modification application and documents verifying their current financial circumstances. Plaintiffs contacted WACHOVIA each and every month thereafter to check on the status of their loan modification application. Each time Plaintiffs contacted WACHOVIA, they were told their application was still under review. Accordingly, Plaintiffs had every reason to believe and expect that their application for a loan modification would be approved and was forthcoming.

After hearing nothing, Plaintiffs contacted WACHOVIA in May 2010 to check on the status of their application. Despite Plaintiffs' performance of all the required conditions, WACHOVIA told Plaintiffs that their application for a loan modification had been denied.

## II

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. The court must decide whether the facts alleged would entitle plaintiffs to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. (*Conley v. Gibson* (1957) 355 US 41, 45-46; *De La Cruz v Tormey* (9th Cir. 1978) 582 F2d 45, 48; *SEC v.*

PLAINTIFFS' OPPOSITION TO WACHOVIA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

*Cross Fin'l Services, Inc.* (CD CA 1995) 908 F. Supp. 781, 726-727.) The court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inference from those allegation in the light most favorable to plaintiff, and construe the complaint liberally." (*Rescuecom Corp. v. Google, Inc* (2nd Cir. 2009) 562 F3d 123, 127; *Scott v. Ambani* (6th Cir. 2009) 577 F3d 642, 646.) No matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. (*Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 556; *Berheim v. Litt* (2nd Cir. 1996) 79 F3d 318, 321 – recovery may seem remote and unlikely on the face of the pleading, but that is not the test for dismissal.)

## III

## ANALYSIS AND APPLICATION

### A. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE HOMEOWNERS' LOAN ACT.

The Homeowner's Loan Act ("HOLA") does not preempt Plaintiffs' causes of action. A private right of action may inhere within a statute, otherwise silent on the point, when such a private right is necessary to achieve the statute's policy objectives. (*Cannon v. University of Chicago* (1979) 441 US 677, 683.) The process of foreclosure has traditionally been a matter of state real property law. (*Mabry v. Supr. Ct. (Aurora)* (2010) 185 Cal.App. 4d 230-231; citing *BFP v. Resolution Trust Corporation* (1994) 511 US 531, 541-542. "Historically, real property law has been the exclusive domain of the states.")

Under HOLA, the Federal Office of Thrift Supervision ("OTS") issued section 560.2 of title 12 of the Code of Federal Regulations ("C.F.R.") a regulation that itself delineates what is a matter for federal regulations, and what is a matter for state law. Specifically, 12 C.F.R. §560.2(c) provides, that "state laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of federal savings associations …2) real property law…4) tort law." 12 C.F.R. §560.2(c). With this is mind, HOLA does not preempt Plaintiffs' claim for financial elder abuse because it is an intentional tort committed by WSB. Thus, HOLA does not preempt Plaintiffs' cause of action for Unfair Business Practices, because Plaintiffs' cause of action for Financial Elder Abuse is incorporated therein.

- 4 -
PLAINTIFFS' OPPOSITION TO WACHOVIA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

## B. PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO MAINTAIN A CAUSE OF ACTION FOR FINANCIAL ELDER ABUSE.

The California Legislature enacted the Elder Abuse Act, Cal. Welf. & Int. Code §§ 15600-15675, "to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." (*Negrete v. Fid. & Guar. Life Ins. Co.* (2006) 444 F.Supp.2d 988, 1001.) Financial elder abuse occurs when a person or entity:

"(1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both. (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal.Welf. & Inst. Code §15610.30(a)(1)-(2).

A person or entity is "deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secrets, appropriates or retains possession of property in bad faith." Cal. Welf. & Inst. Code §15610.30(b). A person or entity "is deemed to have acted in bad if the person or entity knew or should have known that the elder… has the right to have the property transferred or made readily available to the elder." Cal. Welf. & Inst. Code §15610.30(b)(1).

To utilize the Elder Abuse Act's enhanced remedies, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse." Id. §§15657.5(b) and 15657.5 (a). In this case, WSB solicited Plaintiffs to refinance the Subject Property. WSB paid itself $11,000 in fees, which it wrongfully obtained as a result of WSB's false representations about the true terms of the loan, which WSB knew to be false and significantly different than the terms which Plaintiffs agreed to and believed were embodied in the loan agreement. WSB did not orally disclose to Plaintiffs that the true terms of the loan were significantly different than the terms previously represented. Rather, WSB handed Plaintiffs a huge stack of documents and told Plaintiffs where to sign.

Under California law, when brokering a loan for a borrower of "modest means and limited experience in financial affairs," a broker has "duties of oral disclosure and counseling which requires brokers to disclose orally the true rate of interest, the penalty for late payments or

other material terms of the loan." (*Zimmer v. Nawabi* (2008) 566 F.Supp.2d 1032; citing *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 (such borrowers may be assumed to have justifiably relied on the broker's expertise.)) Defendants did not broker the loan. However, Plaintiffs had no need to retain a mortgage broker because they were directly solicited by WSB to refinance the Subject Property. Defendants should not be permitted to escape liability because they now claim that they were not Plaintiffs' agent.

This cause of action is also not time-barred. California Welfare and Institutions Code §15657.7 provides, as follows:

> "An action for damages pursuant to Sections 15657.5 and 15657.6 for financial abuse of an elder or dependant adult, as defined in Section 15610.30, shall be commenced within four years after the plaintiff discovers **or**, through the exercise of reasonable diligence, **should have discovered,** the facts constituting the financial abuse." [Emphasis Added.]

As stated above, in 2009, Plaintiffs began to experience severe financial problems due in part to the increasing interest rate and mortgage payments and began to struggle to make their monthly mortgage payments. When they started having severe financial problems, Plaintiffs began to suspect that the true terms of the loan agreement were significantly different than the terms represented by WSB: that's when Plaintiffs learned that they had been lied to. Therefore, Plaintiffs' claim does not expire until December of 2013. For all of these reasons, the Court should deny Defendants' Motion to dismiss this cause of action.

## C. PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO MAINTAIN A CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES.

Plaintiffs' second cause of action for unfair business practices is not time-barred for the same reasons that Plaintiffs' claim for financial elder abuse is not time barred. As stated above, Plaintiff's claim for financial elder abuse is not time-barred because it wasn't until late 2009 that Plaintiffs discovered that the true terms of the loan agreement were significantly different than the terms Plaintiffs agreed to and believed were embodied in the loan agreement, as previously represented by WSB. Thus, Plaintiffs' claim does not expire until December 2013.

In addition, Plaintiffs have standing to maintain this cause of action because they have

suffered injuries including, but limited to, paying WSB unearned and undisclosed fees in excess of $11,000. WSB wrongfully obtained these fees as a result of WSB's false statements about the true terms of the lean, which WSB knew to be false and significantly different than the terms which Plaintiffs agreed to and believed were embodied in the loan agreement. For all of these reasons, Plaintiffs have alleged facts sufficient to maintain their second cause of action and the Court should deny Defendants' Motion to Dismiss this cause of action.

C. **PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND**

Leave to amend should almost always be granted by the court on an initial motion to dismiss. FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires." (FRCP 15(a); *Allen v. City of Beverly Hills* (9th Cir. 1990) 911 F2d 367, 373; *Friedlander v. Nims* (11th Cir. 1985) 755 F2d 810, 813.) FRCP 15(a) severely restricts the court's discretion to dismiss without leave to amend. Where a more carefully drafted complaint *might* state a claim, a plaintiff *must be given a* chance to amend the Complaint before the district court dismisses the action with prejudice. (*Silva v. Bieluch* (11th Cir. 2003) 351 3Fd 1045, 1048; *DeCarlo v. Fry* (2nd Cir. 1998) 141 F3d 56, 62.)

IV.

CONCLUSION

For all the foregoing reasons, Plaintiffs, John H. Giordano and Georgana G. Giordano, respectfully request that the Court deny the Motion to Dismiss filed by Defendant, Wachovia Mortgage, a division of Wells Fargo Bank, N.A., sued as "Wells Fargo, N.A." f/k/a Wachovia Mortgage, FSB and f/k/a World Savings Bank, FSB. In the event that the Court grants the Motion to Dismiss, Plaintiffs request leave to amend.

Dated: March 15, 2011

                                        <S> Stephen C. Ruehmann, Esq.
                                        Attorney for Plaintiffs
                                        John H. Giordano and Georgana G. Giordano